11MURRAY, Judge.
On September 23,1993, Troy West, Steven Bell and Steve Evans[1] were indicted for the first degree murder of Issac L. Wilson with the specific intent to kill or commit great bodily harm to more than one person. The charges against Troy West were severed, but motions to sever filed by Mr. Evans and Mr. Bell were denied. Following a two-day trial in July 1994, Steve Evans was found guilty of second degree murder, but Steven Bell was found not guilty. Mr. Evans was sentenced to life imprisonment at hard labor without benefit of parole, probation or suspension of sentence, and now appeals.
FACTS
Issac “Ike” Wilson was shot to death around 3:00 a.m. on August 5, 1993, in front of a food store in Algiers, Louisiana. The autopsy revealed that Mr. Wilson had been shot twenty times by two different type weapons. The police firearms expert testified that the casings found on the scene as well as the bulletjjfragments from Mr. Wilson’s body indicated that both a handgun and a rifle or assault weapon had been used in the crime. Although the police identified five eyewitnesses to the shooting, only two were available to testify at trial.[2]
Darlene Thompson testified that she and Tywanda Major had gone to a nearby club earlier in the evening, where Ms. Thompson planned to meet Mark Hendricks. When leaving that club at about 2:30 a.m., Ms. Thompson stopped briefly in the parking lot to talk to Ike Wilson about Mr. Hendricks, who had not shown up. While there, she saw Steve Evans, Steven Bell and Troy West by a red Nissan in the parking lot.
Ms. Thompson left the club with Tywanda Major, Joyce Johnson, and someone named “Lasondra” or something similar, planning to go to another club. On the way, they stopped to use the phone at Julien’s Food. Store, trying to locate Mark Hendricks. Ike Wilson drove up and pulled next to their car, and as Ms. Thompson and Mr. Wilson were speaking, Mark Hendricks showed up. As the two young men stood slightly away from the others and were talking, Ms. Thompson saw Steve Evans lift a large gun and point it toward Ike Wilson and Mark Hendricks. Ms. Thompson yelled to Mr. Hendricks, and the two of them ran into a wooded area near the store. Ms. Thompson stated that she then heard two kinds of sounds, booms and pops, and that she saw the fire as Mr. Evans shot Mr. Wilson. She and Mr. Hendricks were both hit in the legs by the gunfire, and were later treated for these wounds. After the shooting, Ms. Thompson saw Mr. Evans and another young man with a handgun get into a red car and drive away. J^She had grown up with Steve Evans and was thus certain that he had been the one firing the “big gun.”
Joyce Johnson, who had also known Mr. Evans for years, corroborated and added to the testimony of Ms. Thompson. Ms. Johnson saw Steve Evans shoot at Mr. Wilson *1289 with a large gun and also saw Troy West firing in the same direction with a smaller gun. Both eyewitnesses said the shooters had been wearing white t-shirts.
DISCUSSION
In his sole assignment of error, Mr. Evans claims that the trial court abused its discretion by denying his motion for a continuance, after having granted five continuances to the State. The defense appears to argue that because these continuances were permitted over his objections, he is automatically entitled to at least one continuance. Mr. Evans further contends that because the denial of his motion to continue prevented him from presenting crucial alibi testimony, his conviction must be reversed and a new trial ordered.
Article 709 of the Code of Criminal Procedure provides that:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
A trial court’s denial of a motion for continuance will not be disturbed on appeal without a clear showing of abuse and specific prejudice. State v. Martin, 93-0285, pp. 10-11 (La.10/17/94), 645 So.2d 190, 197; see also State v. Cockerham, 95-0172, pp. 3-4 (La.App. 4th Cir. 3/14/96), 671 So.2d 967, 970, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363, and eases cited therein.
In this ease, Mr. Evans’ counsel filed a handwritten motion for continuance on the morning of trial which merely stated it was based upon “the unavailability of defendant’s alibi witnesses.” However, the only reference in the record to any such witness is in an answer to the State’s motion for discovery, where counsel provided a name and address but no further information, as required under Code of Criminal Procedure Article 727 A.[3] Furthermore, there is nothing in the record suggesting that Mr. Evans requested the issuance of any witness subpoenas, or even filed a pre-trial witness list. Because Mr. Evans failed to establish any of the elements required by Article 709, the trial court did not abuse its discretion in denying his motion for continuance. See, e.g., State v. Wille, 559 So.2d 1321, 1334-35 (La.1990) (death penalty conviction would not be reversed for alleged inability to present alibi testimony where defendant failed to comply with La.Code Crim. Proc. Ann. art. 709). We find nothing in the law which provides otherwise based upon the number or timing of continuances granted to the State.
Additionally, we find no reasonable possibility that the purported alibi testimony would have overcome the eyewitness testimony of Darlene Thompson and Joyce Johnson. Both women testified that they had known Mr. Evans for many years and that they were certain he was one of the men who shot and killed Ike Wilson. Therefore, we cannot find that the defendant has established specific prejudice resulting from the denial of his continuance.
|gA review of the record for patent errors reveals that there were none. Accordingly, Mr. Evans’ conviction is
AFFIRMED.

. The record indicates that although Mr. Evans was charged and processed as "Steven," his name is actually Steve.

. Tywanda Major had been relocated after she was allegedly threatened, but could not be found for trial. Mark Hendricks was shot and killed August 13, 1993. While a statement given to police by Connie Wilson appears in the record, there is nothing to indicate why she did not testify.

. We further note that the defendant’s motion for new trial also asserted only the general argument that, to counter the state eyewitnesses, it was “imperative" that his alibi witnesses be allowed to testify, and even his appellate brief fails to contain the information required under Article 709.