706 So.2d 468 (1997)
STATE of Louisiana
v.
Melvin JOHNSON.
No. 96-KA-0950.
Court of Appeal of Louisiana, Fourth Circuit.
August 20, 1997.
Opinion Granting Rehearing February 4, 1998.
*470 Harry F. Connick, District Attorney, Joseph E. Lucore, Asst. Dist. Atty., Orleans Parish, New Orleans, for appellee.
Dwight Doskey, Orleans Indigent Defender Program, New Orleans, for defendant.
Before BARRY, KLEES and LANDRIEU, JJ.
LANDRIEU, Judge.
The State charged Melvin Johnson with one count of armed robbery (La.Rev. Stat.14:64) and one count of aggravated rape (La.Rev.Stat.14:42), both involving the victim, G. W., as well as one count of attempted forcible rape (La.Rev.Stat.14:27(42.1)) involving the victim, N.S. Johnson entered a not guilty plea on all counts. A jury found him guilty as charged on all counts. The trial judge sentenced Johnson as a third offender on count one to sixty-six years at hard labor without the benefit of probation, parole, or suspension of sentence. He also sentenced him to life imprisonment without the benefit of probation, parole, or suspension of sentence on count two. On the third count, attempted forcible rape, the judge sentenced Johnson to twenty years at hard labor, with the first three years to be served without the benefit of probation, parole, or suspension of sentence. We reverse and remand for a new trial.

STATEMENT OF THE FACTS
On April 17, 1992, G.W., a student at Xavier University, who was also employed part-time at Tower Records in the French Quarter, left work at approximately 12:30 a.m., stopped at a bar for a drink, then took the Canal Street bus home. Johnson got on the bus and attempted to converse with G.W., who did not respond. Eventually, G.W. exited the bus approximately two and one-half blocks past his normal stop because the bus driver missed the stop. Johnson also exited the bus. G.W. unsuccessfully took a circuitous route to his home to discourage Johnson from following him. Johnson caught up with G.W., again trying to talk to him and telling him that his name was Melvin. As G.W. went under the Interstate 10 overpass at Carrollton Avenue, Johnson pointed a gun to G.W.'s head, dragged him near railroad tracks, and forced him to get into a flat-bed truck. Johnson, while still holding the gun, ordered G.W. to disrobe and then anally penetrated him. After the anal intercourse, Johnson went through G.W.'s pockets and took $90.00. Then, Johnson told G.W. that they were going to get some beers. He forced the victim at gunpoint to walk to a bar on Tulane Avenue. They sat at the bar, drinking two beers each, while Johnson continued to hold the gun. Finally, after expressing remorse, Johnson allowed G.W. to leave. G.W. ran home and called the police. G.W. admitted at trial that he never sought help from anyone in the bar nor did he attempt to run away.
G.W. followed instructions from the police to go to Charity Hospital for a rape exam. That exam was performed by Dr. Eustace Edwards, who was qualified at trial as an expert in rape examinations. Dr. Edwards testified that G.W. gave a history of having been raped and robbed at gunpoint. Dr. Edwards also testified that G.W. was upset but not hysterical, that there were recent bruises on his back, and that there were no blood stains. The physical examination of the rectal area showed tenderness but no tears or cuts. Dr. Edwards found one dead sperm on the rectal swab taken from G.W.
Sergeant Adele Bonura, a detective with the rape squad, interviewed G.W. at the hospital. *471 A few days later, he showed her the place near Tulane Avenue where the rape occurred. Sergeant Bonura testified that she never interviewed anyone from the bar on Tulane Avenue where Johnson and G.W. had beer.
Detective Reginald Williams, another rape squad officer, testified that a photo line-up, which did not contain Johnson's picture, was shown to G.W. a few days after the crime. G.W. could not make an identification. Det. Williams mailed a second photographic line-up to G.W. in October 1992. From that group of photographs, G.W. selected Johnson's picture. Det. Williams explained that he had compiled the second line-up because of the similarity between the rape of G.W. and the attempted rape of N.S., the second victim in this case.
The attempted rape of N.S. occurred in October 1992. At that time both Johnson and N.S. were employed with Quixx Temporary Service. At approximately 2:00 a.m. on October 12, 1992, N.S. and Johnson were riding the same bus going to work. Both exited the bus at Canal and Rampart streets, and Johnson began talking to N.S. about sex, shoved N.S. into an alley, and threatened to kill him. N.S. testified that Johnson had a blue book bag with him and that Johnson told him he had a gun, but N.S. did not see a gun. Johnson told N.S. to take down his pants, and when N.S. hesitated, Johnson tried to do so. N.S., in an attempt to get help from police officers in the area, suggested that they go elsewhere because a woman was watching. They began walking until Johnson again pushed N.S. into another alley and threatened him. When N.S. saw Johnson reach into his book bag to get a condom, N.S. ran to the back door of a house to get help. Although he received no answer at the door, N.S. pretended to speak to someone inside, asking that the police be called. Johnson ran off.
N.S. sought help from two deputies on Tulane Avenue but neither took his complaint seriously. He then phoned 911 from a pay phone. Officers responded and apprehended Johnson near the Quixx Temporary Service office.
The defense presented no witnesses at trial.
We have reviewed the record for errors patent and have found none.

ASSIGNMENT OF ERROR NUMBER 1
The first assignment of error, presented in counsel's brief, arises from the trial judge's refusal to excuse a juror for cause. The juror (juror A) allegedly stated that if he thought the defendant was a homosexual, then he would automatically convict him of these homosexual rape crimes. This assignment of error has merit.
La.Code Crim. Proc. art. 797(2) allows a defendant to challenge a prospective juror for cause on the ground that the juror "is not impartial, whatever the cause of his partiality." When ruling on a challenge for cause, the trial judge is vested with broad discretion that will not be disturbed on appeal unless shown to have been abused. State v. Brown, 496 So.2d 261 (La.1986).
Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause he made. The defendant need only show two things to obtain a reversal of his conviction: (1) that the trial judge erred in refusing to maintain a challenge for cause by him; and (2) that he exhausted all of his peremptory challenges. State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, 686.
In this case, the defense exhausted all twelve peremptory challenges and made a contemporaneous objection to the court's ruling on the challenge for cause. Thus, Johnson is entitled to complain on appeal of the ruling refusing to maintain his challenge for cause.
The Trial Judge waited until the conclusion of the evidence to have the reasons for the objection and denial, previously heard in chambers, placed on the record. The Court summarized the challenge of juror A as follows:
[Juror A] had two jobs and maybe didn't feel he was as alert as he could be. With regard to that issue, the Court kind of believed he wanted off the jury. He *472 didn't want to be here until 10:00 o'clock tonight. But he also did say that he would have a problem with the defendant if it was shown that he was homosexual, but he subsequently answered that he could listen to the evidence and base a verdict on the evidence.
A review of the voir dire transcript of the second panel of jurors, which included juror A, shows that the court's findings are partially accurate, although several of the replies are noted by the court reporter as "inaudible." Indicating that he worked two jobs, juror A volunteered that he was having problems with his attention span when the prosecutor was questioning the panel. When asked by the prosecutor if that would affect the way he heard the case, the juror's comment was inaudible.
Next, juror A indicated that he agreed with another juror, who was excused for cause, when he stated that if the defendant was shown to be gay, then he would automatically be guilty:
[prosecutor]:
If it comes out that in your mind he is gay, then he's automatically guilty?
[juror B]:
(Inaudible)
[prosecutor]:
Does anyone else feel that way?
[juror A]:
(Inaudible)
[prosecutor]:
He's automatically guilty?
[juror A]:
Yes.
[prosecutor]:
Why do you think that?
[juror A]:
The bible tells you.
[prosecutor]:
The bible tells you. So, if he's gay, even if the facts that come out on the stand don't support the charges, then he's guilty?
[juror A]:
(Inaudible)
[prosecutor]:
Does anyone else feel that way? ...
The prosecutor asked no more individualized questions after this exchange with juror A. Neither the prosecutor nor the court made any attempt to rehabilitate the juror. Later, during voir dire by defense counsel, this additional colloquy occurred:
[defense counsel]:
[Juror A], if the State proves to you or it becomes evident to you that Mr. Johnson is a homosexual, do you have to vote him guilty?
[juror A]:
Almost automatically guilty.
[defense counsel]:
Almost automatically? So you would vote guilty.
[juror A]:
(Inaudible).
Again, neither the prosecutor nor the trial judge made an attempt to rehabilitate the juror. At the conclusion of the voir dire transcript, the court reporter's notations state that the challenge to juror A was denied because "this juror did not agree completely with the `gay equals guilty' statement made previously by another juror." [Emphasis in original.]
The State argues that the Trial Court did not abuse its discretion in denying the challenge for cause because the Court was satisfied that the juror could be impartial. The State suggests that the several inaudible replies, while inaudible to the court reporter, could be heard by the judge and demonstrate that the Court's decision was justified. The prosecutor, however, responded to the final inaudible comments of the juror, after he had stated that "gay equals guilty," by asking if any of the other jurors felt the same way. Thus, juror A did not retreat from his prejudicial statements while the prosecutor conducted voir dire.
Both the State and the defense refer to State v. Murray, 375 So.2d 80 (La.1979). In that case, the defendant on appeal complained that the trial court erroneously granted two State challenges for cause. The challenges were based on the jurors' statements that they would not, under any circumstances, *473 believe the testimony of a homosexual. The issue arose because the victim of the alleged robbery was homosexual. The Court on review found that the trial court did not abuse its discretion in granting the challenge for cause. The Court also noted that the State could have excused both jurors anyway because the State used only ten out of twelve peremptory challenges.
More recently, in State v. Cross, 93-1189 (La.6/30/95), 658 So.2d 683, the Supreme Court found that the trial court erred when it denied a challenge for cause based upon a prospective juror's statements that defendant's failure to testify would create an impact on his ability to sit as a juror and would leave him definitely confused. The Court noted in its reasons for reversal that:
There was no effort thereafter made by the court or the prosecution to rehabilitate this juror who had clearly stated his inability to follow the law in this regard. A trial judge's refusal to excuse a prospective juror for cause is not an abuse of discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, where subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. [Citations omitted.] However, where as here, there has been no attempt to rehabilitate Warner subsequent to his remarks expressing his opinion in this area, the challenge for cause should have been granted.
Cross, 658 So.2d at 687. [Emphasis in original.]
In State v. Mathis, 95-0862 (La.App. 4th Cir. 6/5/96), 675 So.2d 1217, writ denied, 96-1710 (La.3/21/97), 691 So.2d 79, this Court reversed the defendant's conviction because the trial court had erroneously denied challenges for cause, and the defendant was forced to use all of his peremptory challenges. At issue were comments by two prospective jurors who indicated a bias in favor of police officers. One was married to a police officer, and the other stated that he would give more credibility to the police but that did not mean he could not be fair to the defendant. Noting specifically that the State did not rehabilitate the jurors, this Court discussed two similar cases:

State v. Hallal, 557 So.2d 1388 (La.1990), held that a juror should have been dismissed for cause after she said she would assign greater credibility to the State because her husband worked for the Sheriff's Office and she knew the officers who would testify. The court reversed the conviction and remanded.
While the trial judge is accorded broad discretion in ruling on challenges for cause, this Court has cautioned that "[a] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." [Citations omitted]. In this case, [the juror] never expressly stated that she could put aside her acquaintanceship with the police officers, and it was not reasonable for the trial court to accept assurances that she would judge the case impartially on the evidence at trial from a juror who began with the premise that the police officers directly involved in the arrest and questioning of the defendant were telling the truth.
See also State v. Jones, 623 So.2d 877 (La.App. 1 Cir.), writ den. 629 So.2d 419 (La.1993), which reversed a conviction and held that a juror who was formerly employed by the Louisiana State Police and who did not expressly state that she would set aside her bias in favor of police officers should have been dismissed for cause.
675 So.2d at 1220-1221. [Emphasis in original.]
In Mathis, the trial court found that because defense counsel, during voir dire, mentioned the defendant's history of criminal convictions, which is impeachment material, then any juror would be entitled to give another witness without a criminal record more credibility. 675 So.2d at 1219-1220.
In the instant case, the prospective juror never wavered from his statements that he would "almost automatically" find the defendant *474 guilty if he knew the defendant was homosexual. No attempt to rehabilitate the juror was made by the State or the Court. The juror was clearly biased. Furthermore, as noted by the Trial Court, the same juror had indicated that he would have trouble paying attention and staying awake. The Court felt that the juror simply did not want to stay late. Even if this were true, when it is coupled with the clear partiality and bias demonstrated by the juror, it is even more likely that the prospective juror would vote guilty based on his bias and not the evidence. For this reason, Johnson's conviction must be reversed.

ASSIGNMENT OF ERROR NUMBER 2
Johnson's second assignment of error pertaining to alleged erroneously admitted hearsay evidence could arise at retrial; therefore, we will discuss the issue.
Johnson argues that the trial court erred in allowing Dr. Edwards, who examined G.W. after the rape, to testify regarding the G.W.'s statement that he was forced into an alley at gunpoint after being robbed. La.Code Evid. art. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is inadmissible unless it falls within an exception. La.Code Evid. art. 802. La.Code Evid. art. 803(4) provides a hearsay exception for "[s]tatements made for purposes of medical treatment and medical diagnosis in connection with treatment and describing medical history... insofar as reasonably pertinent to treatment or diagnosis in connection with treatment." Dr. Edward's statement, Johnson claims, did not fall within this exception to the hearsay rule and should not have been admitted at trial.
In State v. Bennett, 591 So.2d 783 (La.App. 4th Cir.1991), this Court reviewed the admission of statements made by a rape victim to her examining physician. The statements were not the first report of the rape nor excited utterances, and therefore this Court reviewed the statements to determine if they were admissible as statements reasonably pertinent to diagnosis and treatment. The Court found that the victim's statements describing the actual sexual contact were reasonably pertinent and admissible under La. Code Evid. art. 803(4) because the statements were not used to show the truth of the facts stated. Bennett, 591 So.2d at 786. The Court further found, however, that the victim's statement that the defendant had forced her to drive to a secluded place was not reasonably related to diagnosis or treatment. The Court then found that the error was harmless.
In State v. Tucker, 619 So.2d 1076 (La. App. 1st Cir.1993), the defendant objected to the extensive testimony from a sexual abuse victim's therapist regarding what the victim, a very young child, had told her. The Court found that the statements "were clearly hearsay and were thus inadmissible" because they were admitted for the truth of the matter asserted, and the jury had no opportunity to evaluate the credibility of the victim as she did not testify. 619 So.2d at 1079. The Court then found that the error was not harmless.
The victim's statement to Dr. Edwards that he was robbed and forced into an alley at gunpoint, although in this instance harmless, is nevertheless hearsay and should not have been admitted at trial.

ASSIGNMENT OF ERROR NUMBER 3
We pretermit discussion of this assignment which pertains to matters which will not arise upon a retrial.

ASSIGNMENT OF ERROR NUMBER 4
Johnson, pro se, identifies this assignment as insufficiency of evidence; all of his arguments are directed to his conviction on those counts relating to G.W. The issue of sufficiency of evidence, when raised, must be considered even if there is reversible trial error.
When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, *475 is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial.
State v. Hearold, 603 So.2d 731, 734 (La. 1992).
To determine sufficiency of the evidence a reviewing court must decide whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Nevertheless, the reviewing court may not disregard its duty to consider whether the evidence is constitutionally sufficient simply because the record contains evidence that tends to support each fact necessary to constitute the crime. State v. Mussall, 523 So.2d 1305 (La.1988). The reviewing court is not permitted to consider just the evidence most favorable to the prosecution but must consider the record as a whole since that is what a rational trier of fact would do. If rational triers of fact could disagree as to the interpretation of the evidence, the rational trier's view of all the evidence most favorable to the prosecution must be adopted. The fact finder's discretion will be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Id.
The jury convicted Johnson of the aggravated rape and armed robbery of G.W. Aggravated rape, La.Rev.Stat. 14:42, is defined in part as intercourse without the lawful consent of the victim because it is committed when the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. Armed robbery, a violation of La.Rev.Stat. 14:64, requires proof of 1) the taking 2) of anything of value belonging to another 3) from the person of another or that is in the immediate control of another 4) by use of force or intimidation 5) while armed with a dangerous weapon.
In this case, G.W. testified that Johnson pointed a gun at him while directing him to disrobe. Johnson then anally penetrated him. Although the lab tests were negative, Dr. Edwards testified that the Woods light and microscopic inspection of a rectal swab showed the presence of a sperm. Dr. Edwards also testified that the victim was tender upon examination and had bruises on his back. G.W. testified that Johnson, after raping him, went through his pockets and took approximately $90.00.
Johnson suggests that no physical evidence corroborated the victim's allegation that he was raped. However, a victim's testimony alone, without corroborating physical evidence, is sufficient to establish that a rape occurred. State v. Brown, 620 So.2d 508 (La.App. 4th Cir.), writ denied, 625 So.2d 1062 (La.1993); State v. Wright, 598 So.2d 561 (La.App. 4th Cir.1992), writ denied, 93-2502 (La.3/22/96), 669 So.2d 1227. Also, Dr. Edwards did find bruises on the victim's back which were consistent with G.W.'s testimony that he was forced to lie on his back in the flat-bed truck. Furthermore, G.W. was extensively questioned about his actions after the rape and robbery when he accompanied Johnson to a bar. It is well-settled that credibility decisions by the jury should not be disturbed unless the findings are clearly contrary to the evidence. State v. Harris, 624 So.2d 443 (La.App. 4th Cir.1993), writ denied, 93-2609 (La.6/24/94) 640 So.2d 1339; State v. Cashen, 544 So.2d 1268 (La. App. 4th Cir.1989).
The evidence, even when excluding the inadmissible hearsay, is sufficient to support the convictions for armed robbery and aggravated rape.
Johnson was also convicted of the attempted forcible rape of N.S., a violation of La.Rev.Stat. 14:27(42.1). Forcible rape is defined by La.Rev.Stat. 14:42.1 as:
[A] rape committed where the anal or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape.
*476 Attempt occurs when a person has the specific intent to commit a crime and does an act tending directly toward the accomplishing of his object. La.Rev.Stat. 14:27.
In this case, N.S. testified that Johnson talked to him about sex, then shoved him into an alley, threatening to kill him by shooting him in the head. Although no weapon was openly displayed, Johnson was carrying a book bag. Johnson ordered the victim to pull his pants down, and when N.S. hesitated, Johnson tried to do it. After the victim was able to talk Johnson into moving to a new location where N.S. thought he could obtain help, Johnson again pushed him into an alley and threatened him. This time Johnson reached into his bag, and N.S. saw Johnson take out a condom. Johnson unzipped the victim's pants and told him to bend down because he liked boys.
This testimony is sufficient to prove that Johnson had the specific intent to commit a rape and that N.S. was prevented from resisting the act by threats of physical violence where it was reasonable for N.S. to believe that such resistance would not prevent the rape.

PRO SE ARGUMENTS
Only one of Johnson's remaining pro se arguments is still relevant and will be addressed. It involves the Trial Court's alleged error when it denied the motion to sever count three, the attempted forcible rape of N. S.
Provision for the severance of offenses joined in the same bill of information or indictment is found in La.Code Crim. Proc. art. 495.1:
If it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.
Generally, the trial court is vested with much discretion in its determination of whether to grant a motion to sever, and such determination should be upheld in the absence of an abuse of this discretion. State v. Brooks, 541 So.2d 801 (La.1989). Usually, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime." State v. Lewis, 557 So.2d 980, 984 (La.App. 4th Cir.1990), writ denied, 578 So.2d 922 (La.1991).
In State v. Davis, 596 So.2d 358 (La.App. 4th Cir.), writ denied, 604 So.2d 965 (La. 1992), the defendant was charged with four counts of armed robbery, and all four counts were tried at the same time. On appeal, this Court rejected the defendant's claim that the trial court erred by denying his motion for severance of the counts. This Court noted that the facts of each offense were simple and distinct, that the events occurred on different days in different locations, that the trial judge charged the jury to consider each verdict separately, and that each count had a separate verdict sheet with the victim's name on it.
In State v. Stevens, 522 So.2d 1218 (La. App. 4th Cir.), writ denied, 524 So.2d 517 (La.1988), the defendant was charged with two counts of aggravated rape and other charges arising out of two incidents on successive days. This court found that severance was not mandated because confusion of the counts was unlikely due to the distinct nature of the evidence as to each incident, especially given the fact that the State presented evidence of one incident on one day of trial and presented evidence of the second incident on the next day of trial. The Court further noted that evidence of each offense would be admissible at the trial of the other as evidence of other crimes under State v. Prieur, 277 So.2d 126 (La.1973).
In this case, the Trial Court denied the motion to sever, finding that the counts were triable by the same mode of trial and were strikingly similar. See La.Code Crim. Proc. art. 493. Moreover, the trial transcript indicates that Johnson was not prejudiced by the joinder. The facts of each case were simple and easily separated, and each count had a separate verdict sheet.
Furthermore, as the Trial Court noted, the modus operandi employed in each incident, i.e., getting off a bus with the victim, forcing *477 him into an alley, and threatening to kill the victim with a weapon, are similar enough that evidence of one could be admissible at the trial of the other under Prieur and La.Code Evid. art. 404(B)(1). Article 404(B)(1) provides in pertinent part:
Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, ... or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceedings.
In the instant case, the evidence of the aggravated rape and attempted forcible rape assists in proving intent, preparation, plan and knowledge. Where the testimony shows that the factual circumstances of the other crime and the crime charged are virtually identical, the evidence of the other crime is corroborative of the victim's testimony and establishes a system or plan. State v. Tolliver, 621 So.2d 17 (La.App. 2nd Cir.1993). Hence, the Trial Court did not abuse its discretion in refusing to sever the counts.
Accordingly, Johnson's conviction is reversed and his sentence is vacated. The matter is remanded for a new trial.
REVERSED AND REMANDED.

ON APPLICATION FOR REHEARING
LANDRIEU, Judge.
After we rendered our original opinion, the State furnished us with a per curiam from the trial judge, as well as a transcription of a bench conference during voir dire regarding the challenge for cause upon which we based our reversal of Johnson's conviction. Having carefully reviewed both of these items, we are convinced that the trial judge's decision to deny the challenge for cause of juror A was correct. Accordingly, we grant rehearing in this matter and now affirm Johnson's conviction and sentence.
Following rendition of our original opinion, the trial judge submitted the following per curiam to explain his denial of the challenge for cause of juror A. The per curiam provides in part:
As stated in the transcript, this Court believed that [juror A] simply wanted off of the Jury. [Juror A] first tried to be excused by stating that he was tired and worked two jobs. When these two claims did not work, the court noted that [juror A] then parroted the statement by [juror B] ... regarding "gay equals guilty".... [I]t is this Court's clear recollection that the inaudible segments of the tape do indeed rehabilitate this juror. This Court would NOT have granted the challenge for cause as to [juror B] and denied the challenge as to [juror A] had these jurors expressed the same opinion on this subject. [Juror B] was unequivacol (sic) in his statements regarding gay versus guilty. Had [juror A] been equally unequivacol (sic), this Court would certainly have granted a challenge for cause.
A subsequent attempt was made to enhance the recording of voir dire in an effort to reveal some of the numerous inaudible responses contained therein. This was unsuccessful; however, the state did provide us with a transcript of a relevant bench conference. This transcript provides in part:
[defense counsel]:
Okay, you want to do [cause challenges] now?
[the court]:
Yeah.
[defense counsel]:
"Gay equals guilt"
[prosecutor]:
I think he said he could be fair.
[defense counsel]:
This guy, [juror B], who says it's a sin, homosexuality is a sin, gay equals guilt, which would be
[prosecutor]:
I think he said he could be fair.
[the court]:
Well, in either case, I'm going to excuse him I think.

*478 [defense counsel]:
And then [juror A] was the guy who said he was sleepy, two jobs, had an attention problem, but when the guy in the back said "gay equals guilt," he spoke right up and said in the Bible it says that homosexuality is a crime and you deserve to go to prison if you're a homosexual.
[the court]:
Well, but he didn't agree completely with the gay equals guilt, so I'm going to deny it as to [juror A].
[defense counsel]:
So you're denying it to him. Did you grant it as to [juror B]?
[the court]:
Yeah, as to [juror B].
[defense counsel]:
Okay.
Maybe he was just trying to go home.
[Juror C] ... said he had a lot of problem with the entire concept of homosexual rape and gay equals guilt
[the court]:
But he said he could listen, so I deny it as to him, also.
[defense counsel]:
Okay.
[the court]:
But I will grant it as to [juror B].
[defense counsel]:
Okay, I would note an exception to the denial of the cause.
Considering this transcript and the per curiam together, it is clear to us that the trial judge was justified in his denial of the challenge for cause of juror A. Notwithstanding the inaudible responses on the trial transcript, the trial judge explained in the per curiam his recollection of juror A's responses as well as his understanding of juror A's apparent motivation. Additionally, the transcription of the bench conference provides an acknowledgment by defense counsel that juror A was simply trying to get off the jury and therefore was not sincere in his apparent belief equating homosexuality with guilt on the charges.
Even though the course of events which leads us to change our opinion may be unprecedented, we are nevertheless convinced that the trial judge was correct in his ruling on the challenge for cause for juror A.
Having made this determination, we will address several assignments of error for which we pretermitted discussion in our original opinion.
In Johnson's third assignment of error, he argues that the trial court erred in denying a mistrial when a police officer witness implied that Johnson had been previously incarcerated. The officer was asked by defense counsel why he showed G.W. a second photographic lineup which included Johnson. When the officer responded he did so because of the similarities between the attempted rape of N.S. and the completed rape of G.W., he was asked to describe those similarities. The officer answered that after hearing G.W.'s description of the perpetrator and of the manner that he was sexually assaulted, "my first thoughts were that we were dealing with somebody who had previously been incarcerated and may have been incarcerated for a long period of time." The trial judge admonished the jury to disregard the officer's statement and cautioned him to avoid expressing his opinions.
Assuming that the officer's statement was an implicit reference to another crime committed by Johnson, it nevertheless falls within the discretionary mistrial provision of La. Code Crim. Proc. art. 771, instead of the mandatory mistrial provision of La.Code Crim. Proc. art. 770. Considering the admonition, the vague nature of the statement, and that it was not solicited by a court official but was in response to defense counsel's question, we find no abuse of discretion by the trial judge in his refusal to grant a mistrial following the officer's statement.
In pro se briefs to this court, Johnson assigns error to the trial judge's denial of his request for a continuance so that his retained counsel could adequately prepare for trial. We find no merit to Johnson's argument.
The decision to grant or deny a motion for continuance rests within the *479 sound discretion of the trial judge, and a reviewing court will not disturb such a determination absent a clear abuse of discretion. State v. Strickland, 94-0025 (La.11/1/96), 683 So.2d 218; State v. Evans, 94-2209 (La.App. 4th Cir. 2/5/97), 688 So.2d 1287, writ denied, 97-1457 (La.12/19/97), 706 So.2d 446. A showing of specific prejudice is generally required to demonstrate that the trial court erred in denying the continuance. State v. Cockerham, 95-0172 (La.App. 4th Cir. 3/14/96), 671 So.2d 967, writ denied, 96-1257 (La.10/25/96), 681 So.2d 363. Where the continuance motion is based on inadequate time for counsel to prepare, the specific prejudice has been disregarded only when the preparation time was so minimal as to call into question the basic fairness of the proceeding. Id.
In this case, the record contains a minute entry dated March 22, 1994, two months before the trial was actually held, stating that Gary Wainwright was Johnson's new counsel. Mr. Wainwright's motion for continuance filed on the morning of trial states that he was retained on May 26, 1994, one week before trial. The trial court refused to allow defense counsel to enroll a week before trial if it would mean a continuance of the trial which was set for the day after a holiday. Considering that defense counsel's name appeared in the record two months before trial, that one of the victims was travelling from out-of-state for the trial, and that pretrial motions had been scheduled for the day of trial anyway because of the out-of-state victim's unavailability, the trial court did not abuse its discretion in denying the motion for a continuance.
Finally, also in his pro se brief, Johnson claims that the trial judge violated La.Code Crim. Proc. art. 772 by telling defense counsel that "[t]his Court thinks you're trying to play [games] with it and play with the sequestration rule...." Defense counsel was trying to get the victim's father sequestered during the victim's testimony, but apparently had been urging that the state should not be allowed to call the father to testify.
La.Code Crim. Proc. art. 772 prohibits a judge from commenting on the facts of the case in front of the jury. The trial judge's statement about "playing games" in no way violates this prohibition. Nor has Johnson shown any prejudice to him as a result of the trial judge's comment. Johnson's argument has no merit.
Accordingly, having granted the state's request for a rehearing, and considering what the state has presented to us on the cause challenge during voir dire, we find no merit to any of Johnson's assignments of error. Johnson's conviction and sentence are affirmed.
AFFIRMED.