WILLIAMS, J.
| ¿The defendant, Robert R. Wyatt, was charged by bill of information with aggravated battery, a violation of LSA-R.S. 14:34. Following a jury trial, he was convicted as charged. He was adjudicated a second felony habitual offender and was sentenced to serve 18 years in prison, at hard labor, without benefit of probation, parole or suspension of sentence. For the following reasons, we affirm the defendant’s conviction. We amend the defendant’s sentence to delete the portion which denies the benefit of parole; the sentence is affirmed as amended.
FACTS
On September 3, 2008, Corporal John Hay, a deputy with the Caddo Parish Sheriffs Office, responded to an emergency call at a residence in Shreveport, Louisiana. Upon arriving at the location, Cpl. Hay observed |sSusan Meshell sitting on the back of a fire truck, holding a bloody towel to her head. Ms. Meshell informed Cpl. Hay that the defendant, her ex-husband, had entered her home without her permission. During an argument, the defendant pushed Ms. Meshell, causing her to fall over an ice chest/cooler. The defendant then armed himself with a large souvenir glass mug and hit Ms. Meshell across the head. The resulting injury to Ms. Meshell’s head required multiple stitches.
Later that evening, the defendant was apprehended at a nearby convenience store. He was transported back to Ms. Meshell’s residence, where he was placed under arrest for aggravated battery. The defendant was later released on bond with an order to stay away from Ms. Meshell. Subsequently, the state filed a bill of information, charging the defendant with aggravated battery, a violation of LSA-R.S. 14:34. On December 15, 2008, despite the stay-away order, the defendant went to Ms. Meshell’s home, jumped over the fence, and attempted to break her kitchen window. Ms. Meshell called the police and the defendant was arrested, resulting in the revocation of his bond.
Following a trial held on July 21, 2009, the jury returned a unanimous verdict of guilty on the charge of aggravated battery. The trial court denied the defendant’s motion for new trial and his motion for post-verdict | Judgment of acquittal and/or modification of verdict. On March 22, 2010, a multiple offender hearing was held, and the defendant was adjudicated a second felony offender. Subsequently, he was sentenced to 18 years in prison, at hard labor, without the benefit of probation, parole or suspension of sentence.
The defendant appeals.
DISCUSSION
In his sole assignment of error, the defendant contends the evidence was insufficient to convict him of aggravated battery. He argues that the victim was the only eyewitness to the incident, and her testimony was “full of internal contradictions.” The defendant also argues that Ms. Meshell “intentionally locked police out of the crime scene and refused entry;” therefore, there was no physical evidence of the glass souvenir mug to corroborate that a dangerous weapon was involved in the incident.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 *456 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir.1/14/09), 1 So.3d 833.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529. See also, State v. Bowie, 43,374 (La.App.2d Cir.9/24/08), 997 So.2d 36.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, 36,147 (La.App.2d Cir.12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La.10/12/01), 799 So.2d 490. See also State v. Johnson, 96-0950 (La.App. 4th Cir.8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
Battery is the intentional use of force or violence upon the person of another. LSA-R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. LSA-R.S. 14:34. “Dangerous weapon” includes any gas, liquid, or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm. LSA-R.S. 14:2(3). Thus, in order to convict a defendant of aggravated battery, the state must prove (1) that the defendant intentionally used force or violence upon the victim, (2) the force or violence was inflicted with a dangerous weapon, and (3) the dangerous weapon was an instrumentality used in a manner likely or calculated to cause death or great bodily harm. State v. Ealy, 44,252 (La.App.2d Cir.5/13/09), 12 So.3d 1052, writ denied, 2009-1393 (La.2/5/10), 27 So.3d 298.
|7In the present case, the state called Cpl. Hay as its first witness. Cpl. Hay testified that on the night of the incident, he observed Ms. Meshell sitting on the back of the fire truck holding a towel to her head. He also testified that he saw blood running down the side of her face and “a large softball-like knot on the top of her head.” Ms. Meshell informed him that she had been attacked by the defendant. Cpl. Hay stated that he was unable to investigate the scene of the crime because Ms. Meshell was leaving in the ambulance and did not want him to enter her home while she was away. He testified that after he left Ms. Meshell’s residence, he came into contact with the defendant at a nearby store, and the defendant did not appear to have any injuries. Cpl. Hay identified the defendant in open court.
*457 On cross-examination, Cpl. Hay testified that ordinarily, he would have looked for a weapon in the home. However, he stated that he was unable to enter the home to search for a weapon without a warrant because prior to leaving in the ambulance, Ms. Meshell stated that she did not want him in her home while she was away. Cpl. Hay also testified that he noticed that Ms. Meshell was either “drunk” or had been drinking alcohol.
Ms. Meshell testified that the defendant entered her home without her permission. She stated that she had left her home to search for her two dogs, and when she went back inside, she saw the defendant inside her home. Ms. |sMesheIl testified that the defendant had no reason to be inside her home because: he did not live there; she had not invited him there; he did not pay any of the bills there; and he did not have any belongings there. She also testified that she was afraid of the defendant because he had “hurt” her in the past. Nevertheless, she stated that she became angry and began to argue with the defendant because she believed that he “had something to do with” her dogs being missing. Ms.. Meshell testified that during the argument, the defendant “lunged towards me, pushed me down on[to] a cooler, and then picked up a glass souvenir mug and broke it over my head.” Ms. Meshell stated that the defendant “broke my skull open.” She estimated that the thickness of the mug was approximately one-half of an inch. She further stated that after she was able to convince the defendant to leave the house, she called 9-1-1, locked her house and gate, and she waited outside for emergency services to arrive.
On cross-examination, Ms. Meshell admitted that she had been drinking alcohol approximately two hours before the incident and that she had a history of substance abuse. When questioned as to why she did not give Cpl. Hay the keys to enter her home, Ms. Meshell replied, “[TJhey didn’t ask me for my keys. I would have gladly given it to the sheriff if he’d asked for it.” Ms. Meshell also testified that she told Cpl. Hay that the | defendant had some personal belongings on a swing outside her home; however, she maintained that the defendant did not live at her home at the time of the incident, and that he had never lived with her at that address. Ms. Meshell also testified, for the first time on cross-examination, that the defendant was holding a knife in his hand when he pushed her down and hit her with the mug.
Martha Bolgiano, the defendant’s sister, was the only witness to testify for the defense. Ms. Bolgiano testified that the defendant and Ms. Meshell “fought a lot” and she described the relationship between the defendant and Ms. Meshell as a “love/ hate relationship.” Ms. Bolgiano also testified that the defendant was living with Ms. Meshell at the time of the incident, and the only time he did not live there was when he was working offshore. She further testified that she had witnessed bruises that the defendant had received from Ms. Meshell. However, she admitted that the defendant had never reported any of the alleged violence that Ms. Meshell had inflicted upon him. On cross-examination, Ms. Bolgiano admitted that the defendant had been arrested in the past for a violent crime against Ms. Meshell. She also admitted that, to her knowledge, Ms. Meshell had never been arrested for any crime of violence against the defendant.
We have reviewed this record in its entirety. We find that the |inevidence was sufficient to support the jury’s verdict. Cpl. Hay testified that he observed Ms. Meshell shortly after the incident. She was holding a bloody towel to her head; blood was running down her face; there was “a large softball-like knot on her *458 head;” and she reported to him that the defendant had attacked her. Although Ms. Meshell’s testimony was somewhat inconsistent with regard to whether the defendant lived at the residence, her testimony remained constant that the defendant armed himself with a dangerous weapon (a glass mug) and intentionally used force or violence upon her in a manner likely to cause death or great bodily harm. Ms. Meshell suffered a serious wound to her head which required multiple stitches. Ms. Meshell unequivocally identified the defendant as her attacker. Moreover, Ms. Meshell, as well as the defendant’s sister, testified that the defendant had a history of violent behavior inflicted upon Ms. Me-shell.
The fact finder in this case, the jury, clearly accepted Ms. Meshell’s testimony regarding the incident. We find that the state’s evidence was sufficient, even in the absence of physical evidence, to support the jury’s conclusion that the defendant committed aggravated battery against Ms. Meshell. See, State v. Robinson, supra; State v. Ponsett, supra; State v. Johnson, supra.
This assignment is without merit.
J^ERROR PATENT
Pursuant to LSA-C.Cr.P. art. 920, we have examined the record and we note the presence of one error patent. The defendant was adjudicated a second felony habitual offender and was sentenced to serve 18 years in prison at hard labor without the benefit of probation, parole or suspension of sentence. LSA-R.S. 15:529.1(G) provides, “Any sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence.” The statute does not require that the sentence be served without benefit of parole. See, State v. Tate, 99-1483 (La.11/24/99), 747 So.2d 519. Accordingly, that portion of the sentence denying parole eligibility is erroneous. Since its deletion does not involve the exercise of judicial discretion, we hereby amend the sentence to delete that portion denying the benefit of parole.
CONCLUSION
For the reasons set forth herein, we affirm the defendant’s conviction for aggravated battery and his sentence of 18 years in prison without benefit of probation or suspension of sentence. We amend the sentence to delete that portion which denied the benefit of parole.
CONVICTION AFFIRMED; SENTENCE AMENDED; SENTENCE AFFIRMED AS AMENDED.