DREW, J.
liA unanimous jury found Calvin Kent-rell Housley guilty as charged for the crime of aggravated rape, La. R.S. 14:42(A)(4). Sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence, he now appeals. We affirm in all respects.
FACTS
On July 23, 2010, the defendant was living in Bossier City with his aunt and her five children, plus the aunt’s roommate. He had lived there for over a year because no other family members would care for him. The 19-year-old defendant suffered from mental health issues and received SSI. His aunt was his caregiver.
On the date of the crime, his aunt checked on the children and could not locate S.F. When the aunt entered the defendant’s room, he jumped from his bed in a state of undress. The aunt turned to see an unclothed S.F. She screamed at the defendant and hit him while trying to determine what he had done.
Jaumard Seay was visiting at the time and heard the commotion. He held the defendant until the police arrived.
The defendant was interviewed that day and confessed to inserting his penis into S.F.’s vagina. He was arrested and indicted for aggravated rape.
A sanity commission was appointed and submitted on reports from the physicians. The defendant was found competent to stand trial.
TESTIMONY
The defendant’s aunt[1] testified that:
12* the defendant lived with her and her daughters and her friend Crystal;
• S.F. was four years old at the time of the incident;
• when this event happened, everyone was at home and there were several girls there whom she was babysitting, plus Mr. Seay, who was visiting Crystal;
• in searching for S.F., she looked into the defendant’s bedroom, and saw the defendant’s boxer shorts around his knees, and the child completely naked;
• she grabbed S.F. and took her out of the defendant’s room;
• she reentered defendant’s room, screamed for Crystal, and began beating him;
• she never discussed the incident with the victim;
• in subsequent months, she did notice that S.F., who was six years old at the time of the trial, would sometimes appear sad and needed comforting;
• the defendant received SSI because of mental problems;
• he could dress himself and do other things, but he did not cook;
• he understood when she talked to him;
*1290 • when she entered the bedroom, she was unable to see his genitals; and
• she never saw S.F. in the bed with the defendant.
Kierra Wilson testified that she was at P.H.’s house with several others, including the defendant, whom she identified in open court. When she looked into defendant’s room, she saw the defendant in bed, on top of the naked child.
Jaumard Seay testified that:
• he was visiting P.H.’s roommate, Crystal, on the day of the incident;
• he was in Crystal’s room watching television when he heard P.H. calling him;
|s* he went to the defendant’s room and saw a naked S.F. standing in the middle of the defendant’s bed, while the defendant was hiding under the covers;
• the defendant was wearing only boxer shorts;
• he stopped the defendant from running out the back door;
• he restrained the defendant until the police arrived;
• other children were playing around the house that day; and
• he admitted on cross that he did not see anything that happened in the room between the defendant and S.F., acknowledging that he told detectives Crystal reprimanded S.F. for running around the house in her panties.
Detective Jeffery Ross testified that:
• he was responsible for processing the crime scene for evidence;
• he took pictures of the various pieces of evidence collected including S.F.’s panties as well as a bedspread, a pillow, bed sheets, and a comforter;
• he also collected a pair of the defendant’s boxer shorts;
• in addition to photographing and collecting evidence, he used an ultraviolet light and orange goggles to examine the mattress for bodily fluids; but
• he found none, though the lighting was bad in the room.
Olivia Thornhill Jones was qualified as an expert “sexual assault examiner.” She testified that:
• she was called in to collect evidence from and examine S.F.;
• she swabbed S.F.’s labia, perineum, and anus;
• she collected a reference DNA sample from S.F.’s cheek;
• she collected the shirt and panties that S.F. wore to the hospital;
• her full examination of S.F. revealed redness on her labia majora;
• she was unable to pinpoint the exact cause of the redness;
14* the redness could be caused by various things besides sexual assault;
• the child’s hymen was still intact and was not torn or bruised;
• this lack of bruising or tearing is not uncommon, even with penetration; and
• she read statistics from several scholarly studies which concluded that young children would not always show signs physical of sexual assault.
Monnie Malakhai was qualified as an expert in the field of DNA analysis. She testified that:
• she tested oral, external genital, peri-neal, and anal swabs collected from S.F., searching for the presence of spermatozoa and prostate specific antigen (PSA) which can be found in semen;
• neither substance was found on the swabs collected from S.F.;
• the swabs were tested for male DNA, but none was found;
*1291 • an alternative light examination[2] was done on the victim’s panties and shirt;
• stains characteristic of semen were present;
• other items, such as urine and vaginal secretions can fluoresce or glow under the alternative light source;
• it was more likely that the stains were caused by something other than semen;
• her primary focus was on the items identified as belonging to the victim;
• other items found in the defendant’s room may have revealed semen;
• testing would not have shown when the semen had been deposited; and
• it would be reasonable that the defendant’s DNA would be found in his room.
1 sKevin Little, a detective in the “crimes against juveniles” division of the Bossier City Police Department, testified that:
• he investigated the case, spoke with the aunt, but collected no evidence;
• the persons present were asked to report to the police station for interviews;
• he took statements from the aunt and Kierra;
• he interviewed the defendant at the station;
• he advised the defendant of his Miranda rights and the defendant signed a “rights card”[3] acknowledging that he understood and agreed to waive his rights;
• he recorded the interview with the defendant, though approximately 20 minutes of the conversation took place prior to the audio recording;
• it was a common practice to conduct a “pre-interview” to ascertain the facts and make sure the conversation stays on the subject of that particular crime;[4]
• the recorded interview[5] was played for the jury;
• he asked the defendant to tell him about his sexual problems with his girlfriends, a subject having apparently been discussed prior to the recording;
• after the interview, he collected buccal (DNA) swabs from the defendant, who then had a seizure, requiring treatment by the fire department;
|fi* the Bossier City Police Department did
not have video capabilities for interviews:
• he got the impression that the defendant was “a little slow”;
• the defendant said he had been threatened;
• the defendant denied a police officer threatened him;
• he believed the defendant was talking about the aunt’s threats;
• only interviewer and child were in the room for the Gingerbread House video; and
• during the interview, he could speak with the interviewer via headphones.
The defendant testified that:
*1292 • he was 21 years old at the time of the trial;
• he left school in the ninth grade, and had been in Special Ed classes;
• he was bullied at school by other students because he wore glasses;
• he was living with his aunt and her daughters when this happened;
• his aunt was responsible for his care and support;
• his aunt received an SSI check for him, which he thought was for seizures;
• he could not live on his own;
• he took medicine for seizures and for depression;
• he had no friends and would play video games all day in his room;
• he did not rape, touch, kiss, or penetrate the child;
• he denied getting on top of her or her getting on top of him;
• he denied removing any of S.F.’s clothing;
17« his aunt was accusing him because of his SSI check;[6]
• his answer to many questions was that he didn’t know or didn’t remember;
• he knew right from wrong, most of the time;[7]
• he knew how to manipulate the rules during his schooling;
• he could read and write, a little;
• he knew what he did that day was “a little” wrong;
• he didn’t know the difference between a lie and the truth; and
• he had trouble knowing when people were lying to him.
The DVD[8] of the Gingerbread House interview was shown.
S.F. testified that she did not remember anything about the incident, but that what she said in the interview was true. She confirmed that Uncle Joe put his d* *k in her “tootie” (her term for vagina).
DISCUSSION OF SUFFICIENCY
The defendant argues that the evidence was insufficient to support his conviction. He points out that much of the testimony against him was contradictory.
Our law on appellate scrutiny of sufficiency claims is clear.[9]
*1293 | ^Louisiana law clearly defines the crime of rape.[10]
|3When viewed in the light most favorable to the prosecution, there was sufficient evidence presented to convict the defendant of the aggravated rape of S.F.
Though there was some variance in the testimony of the witnesses, these minor inconsistencies do not undermine the overwhelming weight of the evidence against this defendant.
The state proved that the defendant, at age 18, sexually penetrated a four-year-old child, an abomination admitted by the defendant in his initial interview. At trial, he *1294 admitted confessing, but denied committing the act.
The jury apparently did not believe the defendant.[11]
The victim admittedly provided little probative testimony at trial.[12]
The circumstantial evidence, however, as well as the direct evidence presented, was sufficient to establish the essential elements of the offense.
The resolution of minor testimonial inconsistencies essentially requires the jury to determine witness credibility. As such, the matter is one of the weight of the evidence, not its sufficiency. The evidence presented | inby the state was sufficient for the jury to conclude that the defendant was guilty of the aggravated rape of S.F.
DECREE
The defendant’s conviction and sentence are AFFIRMED.

. The defendant’s aunt, P.H., is the mother of the victim, S.F.

. This examination consists of shining a light, similar to a black light, on the items. If semen is present on the items, it will glow or fluoresce.

. The card was introduced into evidence.

. The "pre-interview” leaves an issue possibly for post conviction relief as to compliance, vel non, with the holding of Missouri v. Seibert, 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

. The CD of defendant’s interview was allowed into evidence. In it, he said that: he had trouble getting a woman; he masturbated every night; S.F. was in the room and pulled down her underwear; he penetrated the child, though not full penetration; it was the first time this happened with S.F.; the aunt burst into the room and began yelling at him and fighting with him; and Mr. Seay held him while P.H. and Crystal beat and threatened him.

. The defendant mistakenly thought that his aunt would continue receiving his SSI check, should he remain incarcerated.

. The defendant did not make an insanity claim. He was found competent to stand trial.

. The DVD was admitted into evidence as D-1.

. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086. This standard, now legislátively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La. 12/14/07), 970 So.2d 529.
*1293 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299; State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The fact finder is charged with making a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 1999-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir. 1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/9/06), 941 So.2d 35.
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, supra; State v. Robinson, 36,147 (La.App.2d Cir. 12/11/02), 833 So.2d 1207; State v. Ponsell, 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 2000-2726 (La. 10/12/01), 799 So.2d 490. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. State v. Robinson, supra; State v. Ponsell, supra. See also State v. Johnson, 96-0950 (La.App.4th Cir.8/20/97), 706 So.2d 468, writ denied, 98-0617 (La.7/2/98), 724 So.2d 203, cert. denied, 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999).
An appellate court reviewing the sufficiency of the evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Jacobs, 504 So.2d 817 (La. 1987); State v. Adkins, 39,724 (La.App.2d Cir.6/29/05), 907 So.2d 232, writ denied, 2006-2514 (La.5/4/07), 956 So.2d 607; State v. Lott, 535 So.2d 963 (La.App. 2d Cir. 1988).

. La. R.S. 14:41 provides, in pertinent part:
A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.
B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.
La. R.S. 14:42 provides, in pertinent part:
A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim’s age shall not be a defense.

. The defendant argues that no witness saw him committing the act, and that testimony varied as to the location of the victim when discovered. The defendant also argues that there was no physical evidence to connect him to the aggravated rape of the victim. The defendant argues that the physical examinations and testing did not corroborate his confession. He ignores that physical evidence is not necessary to convict for rape.

. This leads to some concern about the defendant’s right of confrontation under the Sixth Amendment.