623 So.2d 877 (1993)
STATE of Louisiana
v.
Eugene JONES.[1]
No. 92 KA 1662.
Court of Appeal of Louisiana, First Circuit.
July 2, 1993.
Opinion Denying Rehearing September 17, 1993.
*878 Doug Moreau, Dist. Atty., Office of the Dist. Atty. by Sue Bernie, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Bryan Bush, Jr., Stephen B. Street, Jr., Street & Dugas, Baton Rouge, for defendant/appellant.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
SHORTESS, Judge.
Eugene Jones (defendant) was charged by grand jury indictment with one count of aggravated rape, LSA-R.S. 14:42, and one count of aggravated burglary, LSA-R.S. 14:60. He pled not guilty, was tried by jury, and was found guilty as charged. Defendant was sentenced to life imprisonment without benefit of parole, probation, or suspension of sentence, with credit for time served, for the aggravated rape conviction. He was sentenced to 20 years on the aggravated burglary count. The sentences ran concurrently. Defendant has appealed with five assignments of error.[2]
Assignment of error number three alleges the trial court erred in denying defendant's challenges for cause of jury venire members David Simmons, number 114, Julia Chandler, number 18, and Linda Bishop, number 10, thereby forcing defendant to expend three of his allotted peremptory challenges during the jury selection process.
During jury selection, the trial court denied defendant's challenges for cause of Simmons, Chandler, and Bishop. Defendant was forced to use peremptory challenges on each of these venire members. Defendant's peremptory challenge sheet filed in the record indicates that during the course of jury selection, he exhausted all twelve of his peremptory challenges.[3]
A defendant in a criminal prosecution has a right to a trial by an impartial jury. U.S. Const. amend. VI; La. Const. art. I, § 16. In State v. Lewis, 391 So.2d 1156, 1158 (La.1980), the supreme court stated:
[T]he defendant is denied due process of law where circumstances affecting the juror exist which would offer a possible temptation to the average man to forget the burden of proof required to convict the defendant or which might lead him not to hold the balance nice, clear and true between the state and the accused.
. . . . .

*879 The trial judge is vested with broad discretion in ruling on a challenge for cause, which ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Drew, 360 So.2d 500 (La.1978). However, service on a criminal jury by one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause, although such association does not automatically disqualify a prospective juror.
See also State v. Sylvester, 400 So.2d 640, 643 (La.1981); State v. Domino, 444 So.2d 268, 270 (La.App. 1st Cir.1983).
The substance of defendant's complaint about prospective jurors Simmons and Chandler concerns their responses to questions indicating they would be prejudiced against defendant if he did not testify. While initial questioning certainly warranted defendant's concern, additional questioning by counsel, together with instructions by the court, should have laid this concern to rest because when the trial court finished its even-handed questioning of Simmons and Chandler, both unequivocally stated they accepted the court's stated principle that the burden of proof in all cases is upon the State and the defendant is not required to present anything and would not require defendant to testify. The trial court then denied defendant's challenges for cause of Simmons and Chandler. We find no error in the court's ruling as to these venire members, and defendant's assignment of error to that extent is denied.
Prospective juror Bishop had been employed by the Louisiana State Police for 12 years. She had been an administrative assistant to a colonel for two years at the time of trial, but in earlier years had worked in narcotics, detectives and intelligence, and typing and transcribing cases, some of which included rapes. After the court's general questioning, the State developed the following dialogue:
Q. Do you think that your work at the State Police would be a [hindrance] to being a fair and impartial juror?
A. It plays a bit part. I would do my best to be fair, but, of course, you know, when for nine years you've seen that side of it, this is a whole new side to me.
It's my first experience as a juror. It's quite an experience.
Q. Do you think that you could sit and listen to the testimony and the evidence as presented in this court and, if you were selected as a juror, just base your verdict on whatever you heard in the [courtroom]?
A. Yes, I'd do my best to do that.
Later, the defense developed this dialogue:
Q. Okay. You know, I was in law enforcement for about six or seven years. I've been with the D.A.'s office. I've been around a lot of police officers. I If I were sitting in your shoes, I think and I were asked how my tendency would be to goI think you were asked that and I kind of got your drift. You're around people in law enforcement and you do get sort of a slant, don't you? It's hard not to.
A. That's the only side that you see.
Q. Sure. Sure. And you've got a lot of friends that are in law enforcement, make arrests every day, and you would like to think they're doing their job properly, that they're not out [there] busting people who don't deserve to be busted.
A. Right.
Q. So you do get a one-sided picture, don't you?
A. Right.
Q. Do you feel, thenlike I say, I know where you're coming from because I've been there. You know, I go through this every day of my life. Do you feel that it may have an effect on you? That everything else being equal, if you were sitting on this jury, that you might tend to lean towards the State's favor because you know so many people that are in law enforcement and all?
A. In all honestly, I would say, yes, it could.
Q. Okay. And that's what I'm asking.
A. I mean, I think it would be foolish to say, oh, no.
Q. And not withstanding the fact that the judge would read you a bunch of instructions *880 and would tell you what the law is, you feel, even knowing the law, that just because of your situation, you do feel like you might lean towards the State's favor, wouldn't you?
A. Yes.
After this questioning, defense counsel challenged Bishop. Whereupon, the State obtained permission to ask these additional questions:
Q. Ms. Bishop, you indicated to Mr. Wilson that because of your profession you might have a tendency to lean towards the State. I think different people havewhether they're related to law enforcement may feel that totally irrespective of their profession. The real question is, can you set aside what you may feel because of your job or because of any reason that you might tend to lean towards the State and listen to the facts and the evidence presented and base your verdict, if you're a juror, solely on the facts and the evidence presented?
A. I would do my best to do that. But you have to understand, when you're around it, you type arrest warrants, you type [subpoenas.] I'd do my best. I would.
Q. Let me ask you this. If you felt that the State had not proven its case, would you vote guilty just because of your relationship to law enforcement?
A. No, I wouldn't.
Q. You would try to render the fairest and [most just] verdict as you could based upon the facts?
A. Yes, I would.
Then the court followed with these questions:
Q. Ms. Bishop, the bottom line is this. We're looking for 12 fair and impartial jurors. If the court gives you the law that you are to apply, can you follow that law?
A. (Ms. Bishop nodded.)
Q. We're all affected by our experiences in life. It would be silly for us to think that we're not. This is what makes the person, is our experiences in life. But the question is, can you separate yourself from your experiences and listen to what's presented in this [courtroom] and provide a verdict based on what facts are presented in this [courtroom] and give the State as well as the defendant a fair and impartial trial?
A. I would do my best to do that.
Q. And that's all anyone can ask.
The court: At this time the court will deny the challenge for cause.
Mr. Wilson: Note my objection, your honor, please.
Our supreme court in State v. Hallal, 557 So.2d 1388, 1389-1390 (La.1990), noted:
While the trial judge is accorded broad discretion in ruling on challenges for cause, this Court has cautioned that "[a] challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." State v. Jones, 474 So.2d 919, 926 (La.1985); State v. Smith, 430 So.2d 31 (La.1983); State v. Monroe, 366 So.2d 1345 (La.1978). In this case. Mrs. Wilson never expressly stated that she could put aside her acquaintanceship with the police officers, and it was not reasonable for the trial court to accept assurances that she would judge the case impartially on the evidence at trial from a juror who began with the premise that the police officers directly involved in the arrest and questioning of the defendant were telling the truth.[4]
(Emphasis added.) Likewise, the entire dialogue in this case between court and counsel is equivocal on the relevant inquiry, i.e., whether Bishop could put aside her natural and understandable bias and be a fair and impartial juror. She very honestly and candidly, from the beginning to the end of her examination and rehabilitation, never "expressly" stated she would or could put this bias aside. As far as she would commit was *881 to say she would "do her best" to give defendant a fair and impartial trial. This was not sufficient because Bishop, after expressing reservations about her impartiality, at no time during the attempted rehabilitation by the trial court and the State, ever expressly assured the court she could be fair and impartial and give defendant a fair trial. See State v. Williams, 458 So.2d 1315, 1335 (La. App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). Defendant was entitled to completely neutral jurors. Bishop tried to tell everyone that she was not positive she could be.
For the reasons assigned, the convictions and sentences are reversed, and this case is remanded for a new trial.
REVERSED AND REMANDED.

ON APPLICATION FOR REHEARING
PER CURIAM.
The State has presented a forceful application for rehearing relying primarily on State v. Vanderpool, 493 So.2d 574 (La.1986). It contends defendant has failed to show prejudicial error resulting from the improper denial of his challenge for cause of potential juror Linda Bishop since Bishop did not serve on the jury which convicted defendant.
Before the amendment of Louisiana Code of Criminal Procedure article 800 in 1983, a defendant was required to show he was "forced to accept an obnoxious juror" in order to prevail on his claim that the trial court improperly overruled a challenge for cause. See State v. Breedlove, 7 So.2d 221 (La.1942). When article 800 was amended, this requirement was deleted. According to the official revision comments, the revision changed the law and adopted the dissenting opinion of Chief Justice O'Niell in Breedlove. O'Niell stated at pages 232-233:
[I]f the defendant ... is deprived of one of his twelve peremptory challenges, by being compelled by an erroneous ruling of the judge to use a peremptory challenge in order to get rid of a disqualified or incompetent juror, and if the defendant's peremptory challenges are exhausted in the impaneling of the jury, the erroneous ruling "constitutes a substantial violation of a constitutional or statutory right."
O'Niell based this position on the right to peremptory challenges conferred by the Louisiana Constitution of 1913. The constitutional right to peremptory challenges was maintained when the 1974 Louisiana Constitution was adopted. The Bill of Rights provides in article 1, section 17, that "[t]he accused shall have the right ... to challenge jurors peremptorily. The number of challenges shall be fixed by law."
Article 799 of the Louisiana Code of Criminal Procedure granted defendant twelve peremptory challenges. Eugene Jones exhausted all of his peremptory challenges in the course of the voir dire. Because he was forced to use a peremptory challenge on a prospective juror who should have been excused for cause, he was deprived of his constitutionally guaranteed right to twelve peremptory challenges. This deprivation affected a substantial right of defendant and is thereby grounds for reversal of the conviction. See La.C.Cr.P. art. 921; State v. Sylvester, 400 So.2d 640, 646 (La.1981); State v. White, 574 So.2d 561, 563 (La.App.3d Cir.1991); State v. Domino, 444 So.2d 268, 270-271 (La.App.1st Cir.1983).
This case is easily distinguished from Vanderpool, in which the defendant failed to show prejudicial error because he had used only ten of his twelve peremptory challenges at the conclusion of jury selection. Vanderpool was not deprived of a substantial, constitutionally guaranteed right and failed to show any other prejudicial effect of the improper denial of his challenge for cause. See also State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986).
For the foregoing reasons, the State's application for rehearing is denied.
WHIPPLE, J., dissents and would grant the State's application for rehearing.
NOTES
[1] We note that defendant was also referred to in the record as Eugene Wallace Jones and Wallace Eugene Jones.
[2] Assignment of error number four was expressly abandoned. Since we are disposing of this case on assignment of error number three, we pretermit discussion of defendant's remaining assignments of error.
[3] It was not necessary for defendant to exhaust his peremptory challenges. See La.C.Cr.P. art. 800 (as amended by Acts 1983, No. 181, § 1); State v. Young, 569 So.2d 570, 584 (La.App. 1st Cir.1990), writ denied, 575 So.2d 386 (La. 1991).
[4] While the State presented cogent arguments in response to that portion of the assignment of error dealing with venire members Simmons and Chandler, its brief was completely silent regarding defendant's argument as to Bishop.