WELCH, J.
laThe defendant, Calvin Lindsey, was charged by bill of information with distribution of a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967(A)(1). The defendant pled not guilty. Following a jury trial, the defendant was found guilty as charged. He was sentenced to nine years imprisonment at hard labor, with the first two years of the sentence to be served without the benefit of parole, probation, or suspension of sentence. The defendant filed a motion to reconsider sentence, which the trial court denied. The defendant now appeals, designating the following two assignments of error: (1) The trial court erred in denying the defendant’s challenge for cause of a prospective juror; (2) The trial court erred by failing to sustain the defendant’s hearsay objection. Finding merit in defendant’s first assignment of error, we reverse the conviction, vacate the sentence and remand for a new trial.
FACTS
On March 11, 2003, several police officers from the L.E.A.D. Task Force of the Plaquemine City Police Department, assisted by police officers from the Vermillion Parish Sheriffs Office, were conducting an undercover narcotics operation around the Plaquemine area in Iberville Parish. The undercover agents drove around the area purchasing narcotics from street-level narcotics dealers.
The defendant, who had one leg and was in a wheelchair, approached one of the undercover vehicles, which was equipped with a wireless transmitter and a video recorder, and asked the officers what they needed. The officer driving the vehicle told the defendant he needed a “forty” *543 (slang for $40.00 worth of crack cocaine). The defendant told the officer to “make a block” and meet him on the other side of the tracks. When they met at this second location, the defendant sold the officer on the passenger side two rocks of .19 grams of crack cocaine for forty dollars. The transaction was videotaped.
| ASSIGNMENT OF ERROR NUMBER 1
In his first assignment of error, the defendant avers the trial court erred in denying his challenge for cause of Bonny Lewin, a prospective juror. Specifically, the defendant contends that Ms. Lewin’s comments during voir dire that she would credit the testimony of police officers over the testimony of other witnesses indicated she could not be a fair and impartial juror.
The defense counsel tried to have Ms. Lewin removed for cause, but the trial court denied the challenge because it found that it had rehabilitated her. However, Ms. Lewin was the fourth peremptory strike used by the defense counsel; thus, Ms. Lewin never served on the jury for the defendant’s trial.
An accused in a criminal case is constitutionally entitled to a full and complete voir dire examination and to the exercise of peremptory challenges. La. Const. art. I, § 17(A). The purpose of voir dire examination is to determine prospective jurors’ qualifications by testing their competency and impartiality and discovering bases for the intelligent exercise of cause and peremptory challenges. State v. Burton, 464 So.2d 421, 425 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985). A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror’s responses as a whole reveal facts from which bias, prejudice, or inability to render judgment according to law may be reasonably implied. State v. Martin, 558 So.2d 654, 658 (La.App. 1st Cir.), writ denied, 564 So.2d 318 (La.1990). A refusal by the trial court to excuse a prospective juror on the ground that he is not impartial is not an abuse of discretion where, after further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. State v. Copeland, 530 So.2d 526, 534 (La.1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989). A trial court is accorded great discretion in determining whether to seat or reject a juror for cause, and such | ¿rulings will not be disturbed unless a review of the voir dire as a whole indicates an abuse of that discretion. Martin, 558 So.2d at 658.
A defendant must object at the time of the ruling on the refusal to sustain a challenge for cause of a prospective juror. La.C.Cr.P. art. 800(A). Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, a defendant need only show (1) the erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1280-1281. Defense counsel exhausted all of his peremptory challenges. Therefore, we need only determine the issue of whether the trial judge erred in denying the defendant’s challenge for cause regarding prospective juror Ms. Lewin.
Pursuant to La.C.Cr.P. art. 797(2), a prospective juror may be challenged for cause on the ground that:
The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence *544 of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence[.]
The initial relevant voir dire of Ms. Lew-in was conducted by the court:
Q. Do you have any friends or relatives employed by the District Attorney’s office or any law enforcement agency of any kind?
A. Well, I have friends on the Baton Rouge City Police force.
Q. Okay. The fact that you have friends that work in law enforcement, would that in any manner affect your ability to sit here and give both State and the Defendant a fair trial?
A. No, sir.
Q. Will you be able to evaluate the credibility of law enforcement officers just as much as you will evaluate the credibility of any other witness?
| bA. Yes, sir.
Later during voir dire, when the defense counsel questioned Ms. Lewin further, her attitude regarding the credibility of police officers became more fully realized:
Q. You don’t have a problem with sitting in judgement (sic) of anybody?
A. No.
Q. Making a determination? Okay. Police officers’ testimony, you heard me ask the questions and you can see -
A. I tend to give them a little more credibility.
Q. You do? Why?
A. I don’t know. I just feel like they’re trained, like lawyers, I think they tend to tell the truth more than some of these laymen.
Q. Lawyers tell the truth more?
A. I know there are some jokes out there, but in my opinion. I’m just being honest with you, I tend to give a little more credibility.
Q. Okay. So you would give more credibility to a police officer’s testimony than you would someone else?
A. Probably.
Q. Okay. Well, you understand that that’s not a reason to do that, just because they’re a police officer; do you understand that?
A. Yes.
Q. Okay. If the judge told you you can’t do that just because they’re a police officer, would that pose a problem for you?
A. I would do my best to make it all legal, but I’m just being honest with you.
Q. Okay. And that’s what -
A. If I have two people there, and one was a police officer telling me a story[,] I’d tend to believe the police officer first.
Q. Okay. You can’t say, well, that’s a human being just like anybody else?
A. I can do my best.
|fiQ. Because, see, what you have to determine, it wouldn’t matter whether it’s a police officer or not, just anybody, you have to determine credibility because that’s one of your jobs as a juror.
A. Right.
Q. Okay. But you don’t think you could just treat them the same way as anybody else?
A. I’m not sure; I’ve never been put in that position.
Q. Okay. Well, that’s why we’re asking you the questions because we’re fixing to put you in that position.
A. Right.
Q. Okay. But you really think you’d have a problem treating them like anybody else?
*545 A. I would try to, I can’t — I don’t know.
Q. Okay. Well, I’m going to have to ask you in this fashion, can you promise me that you could put it aside and not give them any more believability because they are a police officer; could you do that?
A. I’m not sure.
Q. Okay. Thank you. Would you please pass the microphone.
Following this exchange, the court attempted to rehabilitate Ms. Lewin:
THE COURT:
Just before we go through the questions of cause, the Court wants to go back because I foresee something coming. Ms. Lewin, since you have the microphone, I just have a quick question as to — as the attorneys say, there is no right or wrong answer but I just want to clarify in regard to your opinion of police officers!’] testimony. And I understand sometimes certain people in certain occupations may, I mean, if we put a priest on the witness stand we assume he’s an honest person that’s going to tell the truth, but sometimes in the real - MS. LEWIN:
I think that’s basically what I’m trying to say.
THE COURT:
— sometimes in the real world we don’t know if they do or they don’t. MS. LEWIN:
Right.
|7THE COURT:
The fact that a police officer testifies that this book is red and another guy says it’s green, you wouldn’t necessarily believe this book would be red - MS. LEWIN:
Right.
THE COURT:
— just because he’s a police officer? MS. LEWIN:
No, I wouldn’t.
THE COURT:
Okay. What I’m asking is that — and I’m going to give you instructions at the end and if those instructions were going to tell you the law and the way you weigh evidence and things of that nature, of course, you’re the trier of fact, you have to decide what the facts are, will you be able to put your personal feelings aside as to, you know, who’s giving that testimony and weigh how they testify and how they say it and what you see before you make your decision?
MS. LEWIN:
I would think so. Like you said, the red and the green, definitely. But I just do hold them in a higher regard; I was just trying to be honest with that.
THE COURT:
I understand.
MS. LEWIN:
I would do my best to give all testimony the same.
THE COURT:
Thank you, ma’am.
Following a recess for challenges, the following exchange took place at the bench:
THE COURT:
Ms. Lewin, Bonn y, I was of the opinion that she rehabbed (sic) a little bit.... Price and Little, I’m going to give you those two. Ms. Lewin, giving them more weight or anything, I don’t believe -
MR. PARKS [defense counsel]:
She was very honest, I asked her three times. Well, since we’re only having police officers, it’s kind of hard that *546 you’re going to say that, hey, we’re going to believe - THE COURT:
|SI understand, just like you hold a priest — I understand what she was saying. She’s rehabilitated. I’m going to give y’all Little and I’m going to give y’all Price. I’m not going to give you Lewin....
The defendant argues that the trial court erred because, as a whole, Ms. Lew-in’s responses reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied. We agree. Aside from the introductory comments by Ms. Lewin regarding credibility when the court first questioned her, Ms. Lewin’s comments establish a pattern of insistence on the veracity of testifying police officers. Ms. Lewin’s answers during voir dire reveal her settled conviction that a police officer will testify more truthfully than a lay witness.
In State v. Jones, 623 So.2d 877 (La.App. 1st Cir.), writ denied, 629 So.2d 419 (La.1993), Linda Bishop, a prospective juror, had worked for the Louisiana State Police for twelve years in several capacities, including an administrative assistant. During voir dire, the following exchange took place between the State and Ms. Bishop:
Q. Do you think that your work at the State Police would be a [hindrance] to being a fair and impartial juror?
A. It plays a bit part. I would do my best to be fair, but, of course, you know, when for nine years you’ve seen that side of it, this is a whole new side to me. It’s my first experience as a juror. It’s quite an experience.
Q. Do you think that you could sit and listen to the testimony and the evidence as presented in this court and, if you were selected as a juror, just base your verdict on whatever you heard in the [courtroom]?
A. Yes, I’d do my best to do that.
Id. at 879.
Later, the following exchange took place between the defense counsel and Ms. Bishop:
Q. Okay. You know, I was in law enforcement for about six or seven years.... You’re around people in law enforcement and you do get sort of a slant, don’t you? It’s hard not to.
A. That’s the only side that you see.
Q. Sure. Sure, ffiid you’ve got a lot of friends that are in law enforcement, make arrests every day, and you would like to think | {¡they’re doing their job properly, that they’re not out [there] busting people who don’t deserve to be busted.
A. Right.
Q. So you do get a one-sided picture, don’t you?
A. Right.
Q. Do you feel that it may have an effect on you? That everything else being equal, if you were sitting on this jury, that you might tend to lean towards the State’s favor because you know so many people that are in law enforcement and all?
A. In all honesty, I would say, yes, it could.
Q. Okay. And that’s what I’m asking.
A. I mean, I think it would be foolish to say, oh, no.
Q. And not withstanding (sic) the fact that the judge would read you a bunch of instructions and would tell you what the law is, you feel, even knowing the law, that just because of your situation, you do feel like you might lean towards the State’s favor, wouldn’t you?
*547 A. Yes.
Id. at 879-880.
At this point, the defense counsel challenged Ms. Bishop. The State then obtained permission to ask the following questions:
Q. Ms. Bishop, you indicated to Mr. Wilson that because of your profession you might have a tendency to lean towards the State. I think different people have-whether they’re related to law enforcement may feel that totally irrespective of their profession. The real question is, can you set aside what you may feel because of your job or because of any reason that you might tend to lean towards the State and listen to the facts and the evidence presented and base your verdict, if you’re a juror, solely on the facts and the evidence presented?
A. I would do my best to do that. But you have to understand, when you’re around it, you type arrest warrants, you type [subpoenas.] I’d do my best. I would.
Q. Let me ask you this. If you' felt that the State had not proven its case, would you vote guilty just because of your relationship to law enforcement? A. No, I wouldn’t.
Q. You would try to render the fairest and [most just] verdict as you could based upon the facts?
A. Yes, I would.
Id. at 880.
The trial court then asked the following questions:
Q. Ms. Bishop, the bottom line is this. We’re looking for 12 fair and impartial jurors. If the court gives you the law that you are to apply, can you follow that law?
A. (Ms. Bishop nodded.)
|inQ. We’re all affected by our experiences in life.... But the question is, can you separate yourself from your experiences and listen to what’s presented in this [courtroom] and provide a verdict based on what facts are presented in this [courtroom] and give the State as well as the defendant a fair and impartial trial?
A. I would do my best to do that.

Id.

The trial court denied the challenge for cause. This court reversed the trial court, relying partly on and quoting from the Louisiana Supreme Court decision of State v. Hallal, 557 So.2d 1388, 1389-1390 (La.1990) (per curiam), wherein the court stated:
[The prospective juror] never expressly stated that she could put aside her acquaintanceship with the police officers, and it was not reasonable for the trial court to accept assurances that she would judge the case impartially on the evidence at trial from a juror who began with the premise that the police officers directly involved in the arrest and questioning of the defendant were telling the truth.
In finding the relevant inquiry to be whether Bishop could put aside her natural and understandable bias and be a fair and impartial juror, this court noted:
She very honestly and candidly, from the beginning to the end of her examination and rehabilitation, never “expressly” stated she would or could put this bias aside. As far as she would commit was to say she would “do her best” to give defendant a fair and impartial trial. This was not sufficient because Bishop, after expressing reservations about her impartiality, at no time during the attempted rehabilitation by the trial court and the State, ever expressly assured the court she could be fair and impartial *548 and give defendant a fair trial. See State v. Williams, 458 So.2d 1315, 1335 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985). Defendant was entitled to completely neutral jurors. Bishop tried to tell everyone that she was not positive she could be.
Jones, 623 So.2d at 880-881.
Similarly, in the instant matter, while on three separate occasions, Ms. Lewin said she would “do [her] best” to be a fair and impartial juror, she never expressly stated that, despite her acquaintanceship with the police officers she knew from the Baton Rouge City Police force, she would or could put her bias aside. Also, just as Bishop tried to inform the court that she was not positive that In she could be a neutral juror, so too did Ms. Lewin on more than one occasion with responses like: “I tend to give them a little more credibility;” “I don’t know.... I think they tend to tell the truth more than some of these laymen;” “I know .. I’m just being honest with you, I tend to give a little more credibility;” and “If I have two people there, and one was a police officer telling me a story[,] I’d tend to believe the police officer first.”
In its brief, the State asserts the defendant “mistakably” relies on Jones because there is a “distinct and crucial difference between Jones and the instant case” in that while the juror in Jones disregarded the judge’s charge, “Ms. Lewin expressed willingness and ability to apply the law as instructed by the trial judge.” Our review of the transcript reveals otherwise. Not only did Ms. Lewin repeatedly express reservations about her ability to apply the law, but the juror in Jones, in one instance, clearly expressed her ability to be impartial despite her ties to law enforcement:
Q. Let me ask you this. If you felt that the State had not proven its case, would you vote guilty just because of your relationship to law enforcement?
A. No, I wouldn’t.
Q. You would try to render the fairest and [most just] verdict as you could based upon the facts?
A. Yes, I would.
Id. at 880.
The State points out in its brief that the crux of the matter is “whether the juror can assess the credibility of the witness independent” of his association with law enforcement (quoting State v. Coleman, 32,906 (La.App. 2nd Cir.4/5/00), 756 So.2d 1218, 1231, writ denied, 2000-1572 (La.3/23/01), 787 So.2d 1010)). The State asserts Ms. Lewin satisfied this requirement when she responded to a hypothetical posed by the trial court that she would not believe a green book was red because a police officer said it was red.[1] We disagree. Ms. Lewin’s response |1gthat she would regard a green book as a green book, despite a police officer’s statement to the contrary, established, not that she could be impartial, but merely that the erroneous testimony of an ostensibly credible witness would not affect her ability to recognize a self-evident, independently observable fact. We do not find that the trial court rehabilitated Ms. Lewin, despite its assertion that “she rehabbed a little bit.”
Ms. Lewin’s voir dire responses as a whole reveal facts from which bias, preju *549 dice or inability to render judgment according to law may be reasonably implied. Accordingly, the trial court erred in denying the defendant’s challenge for cause. Since resolution of this assignment of error results in a reversal of the defendant’s conviction and sentence, we pretermit discussion of the second assignment of error.
CONVICTION REVERSED AND SENTENCE VACATED; REMANDED FOR A NEW TRIAL.
WHIPPLE, J., dissents and assigns reasons.

. That portion of the voir dire to which the State refers is the following:
THE COURT:
The fact that a police officer testifies that this book is red and another guy says it’s green, you wouldn’t necessarily believe this book would be red -
MS. LEWIN:
Right.
THE COURT:
— just because he's a police officer?
MS. LEWIN:
No, I wouldn’t.