934 So.2d 784 (2006)
STATE of Louisiana
v.
Maurice GUSTAVE.
No. 2004 KA 2103.
Court of Appeal of Louisiana, First Circuit.
April 5, 2006.
*785 Anthony G. Falterman, District Attorney, Donald D. Candell, Asst. District Attorney, Gonzales, for StateAppellee.
Frank Sloan, Mandeville, for DefendantAppellant Maurice Gustave.
*786 Before: WHIPPLE, McCLENDON, and WELCH, JJ.
WELCH, J.
The defendant, Maurice Gustave, was charged by grand jury indictment with one count of second degree murder, a violation of La. R.S. 14:30.1, and pled not guilty. Following a jury trial, he was found guilty of the responsive offense of manslaughter, a violation of La. R.S. 14:31. He was sentenced to forty years at hard labor. He moved for reconsideration of sentence, but the motion was denied. He now appeals, designating one assignment of error. We reverse the conviction, vacate the sentence, and remand for a new trial.

FACTS
Because the sole assignment of error pertains to challenges for cause denied as to two jurors, the facts pertaining to the underlying crime are not relevant to the issues to this appeal. Briefly summarized, on August 5, 2000, a fatal shooting occurred at the Geismar Volunteer Fire Department. The defendant fled the scene of the shootings, but surrendered to the police the next day and admitted that he shot at the victim and several other unarmed people "coming towards him," with whom he claimed to have altercations in the past.

CHALLENGES FOR CAUSE
In his sole assignment of error, the defendant contends the trial court erred in overruling defense challenges for cause against prospective jurors, Adrienne Lee and Berton E. Rusk, Sr. The defendant argues that Lee presumed he was guilty and was prepared to convict him before the trial had even begun, and that Rusk had a problem with the possibility that the defendant would exercise his Fifth Amendment right not to testify.
Louisiana Code of Criminal Procedure article 797, in pertinent part, provides:
The state or the defendant may challenge a juror for cause on the ground that:
. . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
. . . .
(4) The juror will not accept the law as given to him by the court.
In order for a defendant to prove reversible error warranting reversal of both his conviction and sentence, he need only show the following: (1) erroneous denial of a challenge for cause; and (2) use of all his peremptory challenges. Prejudice is presumed when a defendant's challenge for cause is erroneously denied and the defendant exhausts all his peremptory challenges.[1] An erroneous ruling depriving an accused of a peremptory challenge violates his substantial rights and constitutes reversible error. State v. Taylor, XXXX-XXXX (La.5/25/04), 875 So.2d 58, 62.
A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. A *787 trial judge's refusal to excuse a prospective juror for cause is not an abuse of his discretion, notwithstanding that the juror has voiced an opinion seemingly prejudicial to the defense, when subsequently, on further inquiry or instruction, he has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. Taylor, 875 So.2d at 62-63.

PROSPECTIVE JUROR LEE
Adrienne Lee was a member of the first panel of prospective jurors. She worked part-time for Emergency Medical Services as a paramedic.
The trial court instructed the first panel that the defendant was presumed innocent, and the State was obligated under the law to prove each and every element of the offense against the defendant beyond a reasonable doubt. The court asked the panel if there were five elements to prove, and the State only proved four, how many of the panel members would find the defendant guilty. The voir-dire transcript reflects the response of the panel as "(Jurors comply.)."
The court asked the panel if any of them felt that they could not be fair and impartial jurors in the case. The voir-dire transcript reflects there was "no response" from the panel. When the State asked the panel if they had any questions, Lee stated:
I don't know if working in East Baton Rouge Parish, because I don't know all the history, but working as a paramedic, [the defendant] looks familiar to me and I don't know from where. It could be in the emergency. It could be from EMS. I don't know, but I'm sitting here racking my brain trying to see where I've seen his face and I can't place it. But it's just bothering me and I don't know if it's because of what I do.
The State asked Lee if she thought it would cause her any problem "worrying about that [Lee] might know [the defendant]." Lee responded:
I just can't get it out of my mind as to where I sawI don't know. I'm just racking my brain trying to think of where I know [the defendant] from but I don't know.
The defense counsel challenged Lee for cause. She argued that Lee had stated she would be tempted to find the defendant guilty if only four of five elements were proven; thus, she could not be a fair juror. The defense counsel also argued that Lee had indicated she thought she knew the defendant because he probably did community service, and when the defense counsel saw someone doing community service, it indicated to her that they had been convicted of something.
The State responded that Lee had never said she could not and would not follow the law. The State also argued that Lee had expressed her ability to follow the law as given to her, notwithstanding her past experience.
The trial court denied the challenge for cause against Lee, the defense objected to the ruling, exercised a peremptory challenge against Lee, and subsequently exhausted all of its peremptory challenges.
In the instant case, considering Lee's responses to the voir dire examination as a whole, there was no abuse of the great discretion of the trial court in denying the challenge for cause against Lee.

PROSPECTIVE JUROR RUSK
Berton E. Rusk, Sr. was a member of the second panel of prospective jurors. He worked for Specialty Coatings, but had worked at the State Penitentiary for ten years and had witnessed a guard and two inmates being killed. He conceded he had *788 a high opinion of police officers, but denied he would favor their testimony over other witnesses. He indicated there were good and bad police officers. He denied any bias in favor of the State.
However, when questioned about his understanding of a defendant's right to not testify, Rusk expressed serious reservations. The following colloquy took place between the court, the defense counsel, and Rusk:
[DEFENSE COUNSEL]:
You understand that if I decide for Maurice not to testify, if I said, okay, he's not going to testify, that you won't hear his side, would you have a problem with that?
MR. RUSK:
Yes.
[DEFENSE COUNSEL]:
Would that tend for you to think that he's hiding something?
MR. RUSK:
In a way, yes.
[DEFENSE COUNSEL]:
So that would create a little problem for you?
MR. RUSK:
Yes.
The trial court then attempted to rehabilitate Rush:
THE COURT:
Would you hold it against the defendant if he decides not to testify?
MR. RUSK:
No.
THE COURT:
You understand that he has the Constitution[al] Right of our United States Constitution not to testify?
MR. RUSK:
Right.
THE COURT:
So in this particular case the question is: If you were selected as a juror, if [defense counsel] decides that her client should not testify, would you hold that against her client?
MR. RUSK:
No.
THE COURT:
Would you go into that jury deliberation room
MR. RUSK:
I'd always have it in my mind but if that would be me going for life in prison, I would want to say something to help myself.
THE COURT:
Did you hear the example I gave before about [defense counsel] may say that the [S]tate has four things to prove or five things to prove and they didn't do it and she says, well, I understand Mr. Rusk is a smart man. He realizes that the [S]tate had five things to prove. They only proved three. Mr. Rusk realizes that my client doesn't have to say anything. Do you understand that?
That may be the reason he may not testify because the [S]tate didn't do what they were supposed to do. Would that have anything to do with him as why would he have to say anything; are you saying you would want him to say something?
MR. Rusk:
Well
THE COURT:
I'll give you another example. Let's say
MR. RUSK:
Well, if the [S]tate does something else and he knew it was wrong and if he is not going to testify, he'd have said something that they would have caught *789 and then got him. He would have went free.
THE COURT:
I don't really follow that logic. Explain yourself again. Maybe I didn't understand.
MR. RUSK:
If he doesn't want to go up and testify, okay. Let's say, I'm not going to say anything. I've got it wrapped up. He don't have to say no and if he did do what they said, that they call and go back and say, okay, we called this, we can use this now, that would hurt him.
THE COURT:
And that goes to the point of someone may just not be able to articulate themselves like you can if they get on there. They might say something that's out of the way because they can't speak very well. That may be the reason why she might decide to tell her client not to take the stand because he can't speak well. I'm not saying that that's the case, but that might be a reason. There's a number of reasons other than someone trying to hide something. Do you understand that?
MR. RUSK:
Yes.
THE COURT:
So the question is: If you were selected as a juror and [defense counsel] decided not to call her client to the witness stand to testify, would you go into that jury deliberation room and say, well, you know he should have said something, he's hiding something, or he should have said something to help himself?
MR. RUSK:
Like you said, if all three things was covered and not be necessary, I wouldn't hold that against him.
. . . .
[DEFENSE COUNSEL]:

But if all three things weren't covered, you would hold it against him?

MR. RUSK:
Well, if it wouldn't be covered, then he'd have to get up there.
[DEFENSE COUNSEL]:
To explain, you feel you want to hear from him?
MR. RUSK:
No.
[DEFENSE COUNSEL]:
And I guess I'm going back to this. It sounds to me when you said, well, if he got up, if they missed something and he got up and he told on him, he would have got free if he hadn't testified. So, in essence, he was hiding something so that he wouldn't get convicted; is that correct? So that he's not testifying because it might convict him; right? That's how you feel; right?

MR. RUSK:
Yes.
(Emphasis added).
In challenging Rusk for cause, the defense counsel argued Rusk had indicated: that the defendant was hiding something; and that if the defendant did not take the stand, it was because he did it, he wanted to go free, and he did not want the district attorney to catch him.
The trial court denied the challenge against Rusk, and the defense objected to the ruling and exercised a peremptory challenge against Rusk. The challenge for cause against Rusk should have been granted. Rusk's responses to the voir dire examination as a whole, indicated he could not accept the law, specifically the defendant's privilege against self-incrimination. Despite the court's direct attempts to rehabilitate Rusk, Rusk continued to maintain his belief that if the State proved all the elements of the offense, an innocent *790 defendant would have to take the stand, a direct implication that he would deem a defendant's choice not to testify as evidence of guilt. Further, the defense exhausted all of its peremptory challenges. Accordingly, prejudice is presumed from the erroneous denial of this challenge for cause, and the defendant's conviction must be reversed, sentence must be vacated, and this matter must be remanded for a new trial. See State v. Lindsey, XXXX-XXXX (La.App. 1st Cir.12/29/05), 928 So.2d 541, writ application pending.
For the foregoing reasons, the defendant's conviction is reversed, sentence vacated, and the matter is remanded for a new trial.
CONVICTION REVERSED; SENTENCE VACATED; REMANDED FOR NEW TRIAL.
WHIPPLE, J., dissents and assigns reasons.
McCLENDON, J., concurs without reasons.
WHIPPLE, J., dissenting.
As the majority correctly notes, a trial court's erroneous ruling which deprives a defendant of a peremptory challenge substantially violates that defendant's rights. See State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278, 1280-1281. However, a trial judge has broad discretion in ruling on challenges for cause. Moreover, a refusal by a trial judge to excuse a prospective juror on the ground that he is not impartial is not an abuse of discretion where, as here, after further inquiry and instruction, he had demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. See Copeland v. Louisiana, 489 U.S. 1091, 109 S.Ct. 1558, 103 L.Ed.2d 860 (1989).
In response to defense counsel's challenge for cause of prospective juror Rusk, the State disagreed with defense counsel's characterization of Rusk's responses and asserted that Rusk was merely not as articulate as some of the other prospective jurors. The State further noted that Rusk had indicated that he understood that no one should take the stand if the State had not met its burden.
In my view, the juror's responses, considered in their entirety, demonstrated the juror's willingness to follow the law and to be fair and impartial. Accordingly, I respectfully dissent from the majority's decision to reverse the conviction and remand for a new trial.
NOTES
[1] The rule is now different at the federal level. See U.S. v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000) (exhaustion of peremptory challenges does not trigger automatic presumption of prejudice arising from trial court's erroneous denial of a cause challenge).